Elizabeth Newman May it please the Court, Elizabeth Newman once again representing Appellant Nizer VIVAS. And once again, Your Honor, I'd like to focus on the Booker issue, particularly in light of the Court's order instructing the parties to be prepared to discuss Knows His Gun. Your Honor, the Court's opinion in Knows His Gun requires a district court to show that it considered all of the information in front of it, all of the factors, all of the 3553A factors, and to provide a defendant-specific reason for the sentence that's imposed. None of that happened here. Here, the defense's sentencing arguments were pretty much all about Booker, Booker mitigation. And pretty much all the district court said was, is there any legal reason why sentence should not now be imposed? The Court did say a few other things, but not a lot. And there's no showing here that the Court didn't regard the guidelines as presumptive, took all of the information it had in front of it into account, or that the sentence that it imposed really is one that is specific to this defendant, to Mr. VIVAS, and not some act of plucking a number out of a sentencing table. This is a low-end guideline sentence, and plucking a number out of a sentencing table is something that this Court has now specifically said a district court can't do, in its opinion, in Díaz-Argueta. The Court instead has to look at the particular person in front of it and the particular circumstances that have brought that person into court for sentencing. And there's simply no showing here from this record that the district court here did anything like that. It may have done, but there's no way you can tell. And for that reason, the sentence has to be vacated and the Court has to remand. One of the things that the government raised in its briefing was that Mr. VIVAS's criminal history justifies the sentence, and I think that really raises two questions. There's two issues, a little issue and a big issue. The little issue was how bad's his record, but the bigger issue is how can you tell whether that affected the sentence or not? I mean, because the district court here really said only five things before imposing sentence. Three of them were ministerial things that it said under its obligations under Rule 32, has the defendant read the pre-sentence report, I'll hear from the defense now, Mr. VIVAS, would you like to address the court? And so all of those are very ministerial things. And the only other two things that it said at all during sentencing were to point out that Mr. VIVAS had been on probation or parole, rather, at the time of this conduct, and, second, to ask a question when the defense counsel talked about Mr. VIVAS's having moved away so that he could get off drugs. He moved to Texas, and he did it by himself. He lived with his strictest relative, who he knew would keep him on an upright path until he was capable of hewing to that path on his own. And the district court said, oh, is that when he lived with a relative in Texas. And none of that can give this Court any sense of how the district court was assessing the circumstances of this case, who Mr. VIVAS was, how it the court viewed the mitigation evidence, how it viewed his prior record. All that we know is that after listening to the defense, the government didn't make an oral argument at sentencing. After listening to the defense go on for pages, the court said only, is there any legal cause why a sentence should not now be imposed, and proceeded to impose sentence without any discussion of why it was doing this, how it viewed this case, how it viewed Mr. VIVAS, how it viewed his conduct, and how any of the 3553A factors, the sentencing guidelines, anything, tied into the number that it was now pronouncing, which was a low-end guideline sentence. On this little issue of how bad was his record, I don't think  But I would point out that, just expressed as criminal history points, that without the recency points he accrued, because his conduct did occur while he was under another sentence, he was only in criminal history Category 4. With the recency points, he was in Category 5. And that's, I mean, his sentence his convictions themselves were perhaps a bit problematic, but on the other hand, he had very impressive mitigation. And it certainly doesn't make him, you know, the criminal of the century. So the point isn't so much about what Mr. VIVAS did or didn't have in his past, but how this Court can satisfy itself that the district court did what Zavala commands it to have done. Excuse me. That is, start with the guideline range, see what other information is out there, and find the most reasonable sentence within a vast territory of reasonableness. And there's nothing in this record that shows that the Court did anything like that at all. Okay. Granted that. Does it have to be the most reasonable sentence or just a reasonable sentence? Well, I think Zavala says that it has to be the right sentence and not simply a plausible sentence. And that's the only or best statement we have from the Court about what kind of sentence it has to be. And so I think also Zavala's discussion of how the Court has to sort of survey the territory of reasonableness and pick the reasonable sentence does suggest that the Court can't pick simply a plausible sentence, as Zavala says, but the best sentence. Now, understanding that perhaps for each judge, the best sentence will be something perhaps a little bit different. And again, it's a very difficult process to describe, because instead of engaging in a mechanical number-counting analysis, the way district judges mostly did a couple of years ago, now the analysis is far more impressionistic. It's far more holistic. And the Court's really asking a district judge to be more like a psychoanalyst than an accountant. So it's a very hard thing to describe. But to answer your question, I do think that Zavala says the most reasonable sentence instead of a reasonable sentence. So what's unreasonable about this sentence? What's unreasonable about this sentence is that the Court, this Court, can't assure itself to No, I understand that argument. Why do you think this sentence was unreasonable? This particular sentence? Yes. Because it took no account of Mr. Vivas's very considerable mitigation. This was a pretty It's a low end of the guideline range. In the old days, we'd say he did take account. In the old days, he wasn't allowed to take account of most of this mitigation evidence. In the old days, we would presume he took account by saying that's a low end of the guideline range. Right. So why should we Silence equals death in those days. But it doesn't now. Now, if the sentence looks reasonable to us, then what's wrong with it? Why isn't the error harmless? Because you're not, with respect, Your Honor, you're not supposed to redo the district judge's job and say it looks reasonable to us as a panel, therefore we're going to affirm it. With respect Even if we take a holistic approach and With respect, Your Honor, your job is to make sure that the district judge took that holistic approach. And to be convinced, looking at the record, that the district judge did what Zavala commands, did what knows his gun commands, and imposed a defendant-specific reason, imposed a sentence that is specific to this defendant for reasons that are specific to this defendant. And we have no reasons here at all. I mean, if in Mr. Vivas's case, the defect is a lack of a general justification for the sentence, as the Court expressed, here, the defect in this case is a lack of any explanation for the sentence at all. There's no way to know from this record what Judge Wilson was thinking when he imposed the sentence or how he assessed the information that was before him about the particular circumstances of Mr. Vivas's past, the particular circumstances of what he had achieved on his own in weaning himself from what must have been a terrible drug addiction, working steadily at very humble occupations, and given his life of political violence, with his father having been the subject of a political assassination in El Salvador, and with his own fear of returning to that country and his inability, due to his record, to apply for asylum in this country. There's no indication, aside from the fact that the district court was sort of was present and on the bench, that the district court considered any of that when the defense presented that to the court at the sentencing argument. And so you can't, with respect, you can't assure yourself that the district court did its job here. It may be that this is a reasonable sentence or even the reasonable sentence for Mr. Vivas. How would we ever determine what the reasonable sentence is? I don't think there's a magic number. Well, then the best you can do, Your Honor, is look to see how the district judge did it, and say that the district judge approached it with care, that the district judge looked at all of the information before it, that the district judge had reasons specific to the person in front of it for imposing the sentence that it did, and that's exactly what the Court cannot do in this case. Thank you, Your Honor. Thank you, counsel. May it please the Court. Kerry Curtis Axel on behalf of the United States. The Court has asked us to address Nose v. Dunn, so I would begin by saying that not surprisingly, the government has a different view of Nose v. Dunn than the defendant does, and the government submits that the most important point that we drew from Nose v. Dunn was the reminder that plain error review, in fact, applies to this case. In a case like this one, where a defendant did not object during the sentencing hearing that the district court failed to consider the 3553A factors or failed to adequately explain that he had considered them. And we submit that's an important lesson of Nose v. Dunn. And as applied in Nose v. Dunn, we would submit there is no plain error here. The sentencing transcript shows that the Court did begin with the guidelines factors, which were undisputed in this case, and then heard from the defendant and from the defense counsel concerning all of the facts and circumstances that the defendant thought were relevant to the Court's sentencing determination. There's no claim that the Court didn't hear those. And the other thing that Nose v. Dunn instructs us is that it's appropriate to look to the record to see whether, in fact, the Court considered the statutory factors, and that the Court is not required to specify each factor that it considered. But, in fact, we can look to the record and see what the Court considered, and that we can presume that, having considered the guidelines, the Court took into account deterrence and rehabilitation. And here there's no issue as to whether or not the Court took into account the because both the defense counsel and the defendant spoke at length about those circumstances, and so the Court necessarily considered them. Well, that's an interesting approach. If the counsel make the argument, does that mean that the Court considered it? Yes, Your Honor. If the counsel argued 3553 factors and the Court says nothing, are you saying that that means he must have considered it because he heard it? Is that the argument? Yes, Your Honor. And I think the facts here bear that the Court did consider it because it was in the factual portion of the argument that the Court engaged in some colloquy with defense counsel. In one question? I'm sorry. One or two questions? In two questions. Yeah. Yes, Your Honor. So I would submit not as a general principle, perhaps, but in the facts of this case. Are you saying it would show that the Court was paying attention? Yes. Which should be sufficient to show that the Court did, in fact, hear the facts and circumstances here. This Court has not told us how much explanation post-Booker is required, and here we realize that we're at the, you know, the end of that hypothetical where we really had no substantive explanation. But returning to the plain error argument, Your Honor, I would submit that under these circumstances, it certainly is not plain error and it doesn't affect his substantial rights that there wasn't more explanation. This Court has told us that it's sufficient to explain how you've reached the guidelines determination. And then if, in the mixed case, if the Court decides to sentence outside the guidelines, why more or less is appropriate. This Court hasn't told us what, in fact, the district court has to say if you're within the guidelines. And 3553C obviously compels him to say something and he said nothing here. But we'd say that's not a plain error. It's not prejudicial. Well, it's error. It's a statutory error, Your Honor. It's a statutory error. Why isn't a statutory error plain error? Your Honor, I would point to, and Nose's gun was actually helpful in this regard because we did not fully vet this issue in the papers. But the, I would point the Court to the case of Vess's. And in that case, that deals with precisely this issue. I'm looking just for the citation of it. It is 169F3-613. And that is a case where the Court found it wasn't plain error to have provided no explanation under 3553C because it would have been a technicality. The Court would have imposed the same sentence regardless. Is that a pre-Booker case? Yes, Your Honor, it is a pre-Booker case. It goes, I think, to the statutory error rather than to the Booker error because I think the Court did have some case law on the statutory error of failing to provide any explanation. But hasn't Booker changed the landscape about the importance of the 3553 factors? Yes, Your Honor. I would acknowledge that it has. And that's why I would acknowledge to this Court that we don't have a full idea of what this Court requires in terms of explanation. We know on the one hand that if the Court goes outside of the guidelines, more specific explanation, Mix tells us that. More explanation is required. We don't have a lot of case law from this Court that says if you're in the guidelines, what's required? And as I said, this case has to be at the ultimate extreme of that where there's no explanation. I would — I mean, that's the unfortunate thing. I think district judges were left, I think, to believe that post-Booker that the reasonableness applied and they didn't have requirements. We've had a bunch of case laws since then, though. But there's no explanation here. None, Your Honor. None, Your Honor. And I would agree with that. Let me ask a — oh, I have a question about that. Let's assume, and this isn't the government's position, but let's assume that after Booker that it's an error to not give reasons, not necessarily every 3553 factor, but that it's an error if the district judge just doesn't give any reasons for a within-guideline sentence, which is sort of like what seems to have happened here. Now, if that was error and if it was plain in light of our precedent, would it affect substantial rights, the third prong of the Olano plain error test, and also would it affect the fairness, integrity, and reputation of the judicial proceedings if we were to note there was an error but not give relief? Yes, Your Honor. I think I understand the question. I think the government would quibble with whether or not it was a plain error. But taking the Court's hypothetical, we would submit that, no, it doesn't satisfy the third or fourth prong of Olano. The third prong of Olano requires that defendant, in fact, be prejudiced. And here we would look to the fact that the sentence would undoubtedly be the same if the Court were required to give a reason for it. How do we know that? I would just submit it's a fair inference that the Court would have given the same sentence even if he had to explain it. Well, isn't that counter to Ameline in a sense? We've required every court to go back and reanalyze the sentence to say, would you have given the same sentence under a discretionary scheme? What you're saying is you can never claim error because we would have to presume that the district court, under these circumstances, because we'd have to presume that the district court would impose the same sentence. Right? Under these circumstances where we had no case law describing what type of explanation was required and you had a guideline sentence, I think those are the factors that we're looking at. I think it's distinguished from Ameline in that there's no issue here that the Court understood that it had discretion. In fact, as defense counsel pointed out. I understand, but there was a big battle in Ameline and the related cases that whether or not we ought to just do it. Well, the arguments made, as you stated it here, that we ought to presume that the district court would impose the same sentence. And it's difficult. I realize that there's a difference analytically, but still it's hard to say that we have to presume that. Here it is different, Your Honor, because in those factors, the government asked the court to presume that the district court would have given the same sentence had it known it had discretion. That's a little bit different than here where the district court knew it had discretion and imposed the sentence nevertheless. So it seems that there's a much stronger inference that this is the sentence that the court thought was the right sentence, even given his understanding that he had discretion to impose some other sentence. Well, the third Olano factor is affects substantial rights, not prejudice, right? There's a difference. Do you equate the two? You described it as you said there's no prejudice because the same sentence would have been imposed, but that may or may not be the same as affecting his substantial rights. I guess I'd have to go back and look at the court's case on that respect. My understanding was that affecting substantial rights went to whether or not defendant was prejudiced, would suffer some injury, and that's what affects his substantial rights if he is, in fact, injured. So that's my understanding of the third prong. Well, doesn't he have a substantial right to have the court consider the 3553 factors? If not, those factors are surplusage. They're just blowing in the wind. So if that's true, then clearly substantial rights are affected. I would draw a distinction, Your Honor, between considering the 3553A factors and explaining that the court considered them. Well, I understand. All he's required to do is to consider, but there's no evidence that he considered them. We would submit, Your Honor, there is evidence that he considered them. Because of the argument of counsel. Through the argument of counsel and the court's engaging in that argument. I am distinguishing between his consideration and his explanation because I do think the substantial rights analysis might be different if we talked about considering the factors versus explaining the factors. Well, you're really depriving the defendant of a right to meaningful appellate review if we adopt your argument, right? I mean, if the district court doesn't have to provide any explanation at all, then how can we review reasonableness? We don't know whether it's reasonable or not except through our impressionistic, holistic view of the sentence or guideline numerical calculation of the sentence on our own, which we're not supposed to do on grant counsels. I mean, how does he have a substantial right to appellate review? How is it satisfied if there's no record? We don't know why the district judge imposed the sentence, do we? We don't know why he imposed the sentence. That is different than saying that there's no record here. And so I want to be very careful in not saying that the government is adopting some overall position that no defendant could get meaningful review on these particular facts. I mean, this is a limited situation where it was a within-guidelines sentence and there's plain error review as opposed to harmless error review. So we would put both the third and the fourth prongs of Olano into play in this analysis, that even if the court reaches a different conclusion about substantial rights, also we would turn to the fairness and integrity of the proceedings and say that the court's failure to explain his sentence doesn't offend the latter, provided the sentence is reasonable. The government's not submitting that the court can't do any reasonableness analysis, but it just has to do it through the lens of plain error in this case. Okay. Any further questions? I have a question, although your time is up. Perhaps Judge Thomas will indulge me on this. No problem. That's why we're here. We didn't address Stevens, which is addressed in the briefs, and I would just like to know if, in this case, if the government thinks there was a Stevens error or if there wasn't, that is, was the testing linked to a treatment program, and then second, if there is a Stevens error, is it plain error in the sense of the fourth prong, that is, would it affect fairness, integrity, reputation of the courts? But the first question is, is there a Stevens error? Yes, Your Honor. We have conceded there is a Stevens error here at the court. This was not the drug treatment instance as with the prior appeal, but this was drug testing as prescribed by the probation officer. So we have conceded that there was error here, but we are arguing that the Alano test is not satisfied and so it should not be remanded because it doesn't satisfy. We've had this issue in a whole bunch of cases. So we've heard others argue it. So what I'm going to do is just sort of arbitrarily say what I would appreciate hearing from you is your discussion of the government's position on the fourth prong. Assuming there's error, that it's plain, that it affects substantial rights, how about the fourth prong? Your Honor, I believe the fourth prong cannot be satisfied here, and I think this is a good instance of that. I would point the Court to 3583E, and I think that that should be dispositive on the fourth prong because under 3583E the defendant here has the ability to challenge the drug test if the probation officer prescribes too many before he violates them. So the defendant is not in a position where he has to violate a condition of supervised release in order to challenge it, and therefore the government would submit that the integrity of the proceedings aren't at all impugned. He has really due process, so to speak, loosely, because he has the ability to challenge this. And so we just think it's not of a magnitude or the consequence to fulfill that prong, and because he has this avenue of relief, we would submit that the defendant cannot satisfy the fourth prong. Let me ask you a question about the language in this case through the lens of Stevens. The order is, quote, he participate in outpatient substance abuse treatment and submit to drug and alcohol testing as instructed by the probation officer. Now that's not identical to the language that you heard described in the last case, but it's pretty close. And in the last case, the government took the position that we ought to construe that whole clause as saying that we're talking about drug and alcohol testing in the context of treatment. You don't have that interpretation in this case. Your Honor, I do not, and I was not aware of that case until I heard it argued here. Actually, there are three cases that have almost identical language on this calendar, and that's why I'm asking the question, is that I think on one hand we have to either construe that language and say, look, when the district court puts treatment and testing in the same provision, if you will, we construe that as treatment. The testing is limited to treatment, and therefore it's okay under Stevens. Or we have to say, no, there are two separate conditions. The second condition isn't okay under Stevens, and then we have to do the plein air analysis that Judge Gould has described. Now the language is a little bit different in this case, and I'd have to look at it carefully to see how it's different and whether it makes a difference. But do you have a position on the route we ought to take if we assume between those choices? Your Honor, having not seen the language in the other cases, I don't think it would be fair for me to opine on really the route that the court should take. You don't want to have crosswords with the legal counsel later either. Or with the appeals unit in my office. No, Your Honor. I can only say that looking at our condition, we assumed, myself and the reviewer assisting me in this appeal, that the outpatient substance abuse treatment was a separate condition to submitting to alcohol testing as instructed by the probation officer. If we construe it as being one condition, would you agree that under that construction it would not violate Stevens? Yes, Your Honor. Okay. Thank you. Thank you. Maybe three minutes. Thank you, Your Honor. Addressing the plain error aspect of no-sysgun, Your Honor, opposing counsel has said that there's really no case law that talks about what a district court has to do or how much explanation it has to give when it's imposing a sentence within the advisory guideline range. And I would submit that the sentencing court has to do in that instance precisely what it has to do in any instance, because the guideline range is not a presumptive sentence, as the Court has conclusively stated in Zavala. It's a starting point. It may, in the exceptional cases Zavala says, end up as a finishing point. But it's not the guideline, advisory guideline sentence is not first among equals when you're looking at sentencing factors. How would you say that it affected your client's substantial rights in this case, this error? Well, I think that the court has itself expressed two ways in which this error affected Mr. Vivas' substantial rights. One is that it's essentially, as you yourself have said, Your Honor, deprived him of the right to meaningful appellate review, since how can this court, as I mentioned earlier, satisfy itself that the district court did what it's what we now know it was supposed to do? And also, as you said, Judge Schwarzer, it's deprived Mr. Vivas of his right to have the court consider the 3553A factors rather than simply sitting and possibly paying attention while those factors are argued in front of it. So I would say that those are two ways in which his substantial rights have been affected. Sentencing is, you know, one of the central serious acts in the criminal justice system, and to say that there was an error here and we really don't know what the district court was thinking but, oh, well, is really perhaps that goes more to the fourth prong of Olano, but really does call the public reputation of the criminal justice system into doubt and does affect the client's substantial right to have the sentencing really be something that thinks about who he is and how he got here and what's appropriate given what he's done and what brought him to this point in his life where he's standing in front of a Federal sentencing judge looking at what's going to happen to his liberty in the next set of years. As to the Stevens issue, again, I've just looked at the two supervised release conditions in the cases this morning, and they look identical to me with the exception of a capitalization issue. The officer and probation officer is not capitalized in Mr. Vivas's case and is in Mr. Cervantes' case, and I don't think anyone could argue that that's some kind of substantial difference, and so I would just point that out to the Court. Very good. Thank you very much, Your Honor. Thank you, both, for your arguments. The case just heard will be submitted.
judges: Thomas, Gould, Schwarzer